UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MICHAEL PACK a/k/a PEACHES,                           :
                                                      :
                                                      :          **MEMORANDUM**
                          Plaintiff,                  :          **AND ORDER**
                                                      :
              -against-                               :          05 CV 9914 (LBS)
                                                      :
MS. ROSS,                                             :
      THERAPIST MENTAL HEALTH, &                      :
MR. D. KHEUTER,                                       :
      UNIT CHIEF MENTAL HEALTH                        :
                                                      :
                          Defendants.                 :
-------------------------------------------------------------X

SAND, J.

      Plaintiff Michael Pack, proceeding pro se, an inmate currently incarcerated at Wende Correctional Facility, brings to this Court a claim for violation of his civil rights, in particular his right to receive medical treatment for his serious medical needs, pursuant to 42 U.S.C. § 1983 and the Eight Amendment to the U.S. Constitution, based on defendants' refusal to provide him with hormone therapy for his self-diagnosed gender identity disorder ("GID").[1]  Defendants now bring this motion to dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted.  For the reasons stated below, the Rule 12(b)(6) motion to dismiss is granted based on plaintiff's failure to exhaust the administrative remedies afforded him.

---

[1] GID has been described by the Supreme Court as a "rare psychiatric disorder in which a person feels persistently uncomfortable about his or her anatomical sex, and ... typically seek[s] medical treatment, including hormone therapy and surgery, to bring about a permanent sex change." Brooks v. Berg, 270 F. Supp. 2d 302, 304 (N.D.N.Y. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 829, (1994) (quoting American Medical Association, Encyclopedia of Medicine 1006 (1989))).

FACTUAL BACKGROUND

Michael Pack is currently serving a life sentence in the New York State prison system for committing murder in the first degree.  See Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint, at 2.  Plaintiff refers to himself alternatively as a homosexual or a female/male, and states that he has GID.  See Discrimination Complaint Form, attached to Plaintiff's Reply to Defendants' Answer to Motion to Dismiss § 1983.

In either May or June of 2005, while incarcerated at Sullivan Correctional Facility, plaintiff sought "some help" from defendant Michael Kreuter, an employee of the New York State Office of Mental Health ("OMH").[2]  See Plaintiff's Reply to Defendants' Answer to Motion to Dismiss § 1983, at 2.  Mr. Pack sought hormone therapy.  Id.  Mr. Kreuter referred plaintiff to Nurse Lilly, who informed plaintiff that he would be unable to obtain a prescription for hormone therapy because "this is not [sic] medical issue and inmates are not allowed hormones to alter sex gender unless they are incarcerated on such medication.  Your health record indicates you were not."  See Letter dated 6/10/2005, labeled as Ex. A to Plaintiff's Complaint.

Plaintiff, on June 12, 2005, wrote to Mr. Kreuter to protest, but received no response.  See Plaintiff's Reply to Defendants' Answer to Motion to Dismiss § 1983, at 3.  On June 28, 2005, plaintiff saw defendant Carla Steinberg Ross, a therapist for OMH, to discuss his transexualism.[3]  Id. at 4.  Ms. Ross told plaintiff that OMH does not handle medical issues.  Id.  Plaintiff saw defendant Ross in the hopes of having OMH determine that he needed hormone therapy.  See Screening Notes, attached to Plaintiff's Reply to Defendants' Answer to Motion to

---

[2] Defendants point out that Mr. Kreuter's name was improperly spelled in the complaint.  See Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint, at 1, n.1.  In any event, defendants assert that Mr. Kreuter did not work at Sullivan Correctional Facility at times relevant to this action.  See Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss the Complaint, at 2.  Plaintiff consents to dismissal as to Mr. Kreuter, asking that John Doe be substituted.  See Plaintiff's Reply Affirmation to Defendants' Motion to Dismiss, at 4.

[3] Defendant Ross's notes state that this meeting was held "in response to [plaintiff's] self referral."  See Screening Notes, attached to Plaintiff's Reply to Defendants' Answer to Motion to Dismiss § 1983, ex. F.

Dismiss § 1983, ex. F.  On August 8, 2005, defendant Ross found no need for hormone replacement therapy, and closed plaintiff's file.  See Plaintiff's Reply to Defendants' Answer to Motion to Dismiss § 1983, at 4.

Plaintiff filed a discrimination complaint with the Department of Justice on August 9, 2005.  Id.  Plaintiff later filed a complaint with the Inmate Grievance Resolution Committee ("IGRC") in which he accused defendant Ross of closing his file in "attempt to prevent my diagnosis from being determine/documented in [sic] preventing hormone therapy."  Id. at ex. C-2.  Plaintiff was then told that the IGRC had no jurisdiction over OMH.  Id at ex. D.  Plaintiff did not seek appeal of this ruling.

On August 25, 2005, plaintiff filed his complaint, pro se.  In it, he alleges eleven causes of action, which can be summarized as followed: injunctive relief allowing him to be given female clothing (first cause of action); receive cosmetic surgery or hormone supplements (second and third causes); damages totaling $50,000 against defendants (fourth through eighth causes) but that these damages be used to defray the costs to the state of causes one through three (ninth cause);  and that the injunction granted by the court apply going forward to whichever facility plaintiff will be confined in the future.[4]  See Compl.  The defendants then moved to dismiss the case.

STANDARD FOR MOTION TO DIMSISS UNDER RULE 12(b)(6)

A court reviewing a complaint under Fed. R. Civ. P. 12(b)(6) will consider all material factual allegations as true and draw all reasonable inferences in favor of the plaintiff.  Lee v. Bankers Trust Co., 166 F.3d 540, 543 (2d Cir. 1999).  The complaint will be dismissed "only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

---

[4] The tenth cause of action is a bit nonsensical.  After asking for a total of $20,000 from defendants in the fourth and fifth cause of action, and after asking that the recovery be used to defray the cost of his surgery, plaintiff then asks that the amount sought "be reduced to $5,000 in damages credited to plaintiffs [sic] account immediately following the courts [sic] order."

which would entitle him to relief." Thomas v. City of New York, 143 F.3d 31, 36-37 (2d Cir. 1998). The court is not limited to the four corners of the complaint; it may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference, … matters of which judicial notice may be taken, or … documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993). This includes "documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference." Martinez v. Williams, 186 F. Supp. 2d 353, 355 (S.D.N.Y. 2002) (internal citations omitted). In addition, the court reads a pro se plaintiff's opposition papers liberally, construing them to raise their strongest arguments. Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

EXHAUSTION AND THE PRISONER LITIGATION REFORM ACT

Defendants argue that the case must be dismissed because plaintiff failed to exhaust his administrative remedies for the claims that he raises.[5] See Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss the Complaint, at 4. The Prisoner Litigation Reform Act of 1995 (PLRA) states that "no action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 USCS § 1997e(a). A failure by an inmate to exhaust his administrative remedies results in an absolute bar of the case: "1997e(a) requires exhaustion of available administrative remedies before inmate-plaintiffs may bring their federal claims to court at all." Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001). Therefore if a suit is about prison conditions, administrative remedies must be exhausted. The Court now turns to the question of whether plaintiff's claim is one relating to prison conditions.

---

[5] Lack of exhaustion is an affirmative defense to be pleaded by the defendant. Jenkins v. Haubert, 179 F.3d 19, 29 (2d Cir. 1999).

The Supreme Court has held that Congress's use of the undefined term 'prison conditions' "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 532 U.S. 516, 532 (2002); see also Lawrence v. Goord, 304 F.3d 198 (2d Cir. 2002). The exhaustion requirement of the PLRA exists "beyond doubt… to reduce the quantity and improve the quality of prisoner suits." Porter, 532 U.S. at 525. It thus follows that the exhaustion requirement applies to individuals bringing suit about individual claims regarding prison conditions, otherwise congressional intent to improve the quality of suits could easily be bypassed by making any suit individual in nature. Id. at 531.

Plaintiff's complaint essentially boils down to asking the court to diagnose him with a medical condition, GID, which his therapist (defendant Ross) would not do, so that he may receive the hormone therapy he feels he needs. In Neal, the plaintiff brought a §1983 claim, and much like Mr. Pack alleged deliberate indifference to his medical needs after his requests for stronger back pain medication were denied. Neal, 267 F.3d at 118. Because the mistreatment was his alone, Neal argued, this did not reflect prison life. Id. at 120. The Second Circuit stated that "the plain language of 'prison conditions' suggests those aspects of prison life affecting the entire prison population, such as the food, medical care, recreational facilities and the like." Id. at 119 (emphasis added) (citations omitted). Complaints of "poor medical treatment. . . .[are] ordinary garden variety complaints about 'prison conditions.'" Id. at 119-20. While the unsatisfactory outcome of his meeting with defendant Ross is certainly personal to plaintiff, like the Neal court, this Court recognizes that "even inadequate, untimely or incompetent medical care may simply be indicative of the level of care generally received by the entire prison population. Taken to its logical conclusion, plaintiff's argument would ultimately preclude almost all prisoner complaints from falling under the exhaustion requirement." Id. at 120-21. This would be the exact opposite of congressional intent. Porter, 532 U.S. at 531. Because plaintiff's complaint is

one regarding prison conditions, plaintiff must exhaust the administrative remedies that are available to him prior to filing suit, as mandated by the PLRA.

It is clear that plaintiff did not exhaust the remedies available to him. New York Department of Correctional Services ("DOCS") regulations require three levels of grievances and appeals. See 7 NYCRR § 701.7 et. seq; Martinez, 186 F. Supp. at 356-57; see also Wilson v. Keane, 2003 U.S. Dist. LEXIS 16113 at **1-2 (S.D.N.Y. 2003).[6] In order to exhaust his claim in satisfaction of the PLRA plaintiff must exhaust all his appeals before filing suit. Moulier v. Forte, 2003 U.S. Dist. LEXIS 9082 at *2 (S.D.N.Y. 2003). Short of following these steps, a complaint must be dismissed. Neal, 267 F.3d at 122. Plaintiff here did file an IGRC form on August 8, 2005. See Plaintiff's Reply to Defendants' Answer to Motion to Dismiss § 1983, ex. C-2. After he filed this form he was told that the IGRC had no jurisdiction over OMH. Id at ex. D. Defendants assert that only DOCS employees, not OMH employees, have the authority to

---

[6] 7 NYCRR § 701.7 et. seq provides in pertinent part:
   (a) First step, IGRC. The role of the IGRC is to resolve grievances or make recommendations for the resolution of the grievances filed.

   (1) Filing the complaint. An inmate must submit a complaint to the Grievance Clerk within 14 calender days of an alleged occurrence. . . .

   (i) Content. In addition to the grievant's name, department identification number, housing unit, program assignment, etc., the grievance must contain a concise, specific description of the problem and the action requested. . . .

   * * *

   (4) Hearing. If there is no [informal] resolution, the full IGRC shall hear and take action on the complaint. A hearing, [**8] if necessary, must take place within seven working days after receipt of the grievance.

   * * *

(b) Second step, appeal to superintendent.

   (1) Filing an appeal. Within four working days after receipt of the committee's written response to the grievance, the inmate or any direct party to [*357] the grievance may appeal the IGRC action to the superintendent. . . .

   * * *

(c) Third step, appeal to CORC [central office review committee].
(1) Within four working days after receipt of the superintendent's written response, an inmate or any direct party to the grievance may appeal the superintendent's action to the CORC. . .

issue the hormone treatments and women's clothing plaintiff seeks in this action. See Affidavit of Steven Stark-Reimer, at 2. Whether the defendants sued by plaintiff do or do not have the authority to provide the relief sought by defendant is irrelevant for the purposes of *this motion*. What is relevant is that plaintiff did not appeal any decision, as the PLRA requires. It is clear from plaintiff's statement of facts and the submitted documents that the proper procedure was not followed, as plaintiff did not appeal the denial of his IGRC, nor did he file a new IGRC naming more proper defendants (i.e. DOCS employees). See Compl. Because plaintiff's compliant is about prison conditions and plaintiff failed to follow the proper procedure to exhaust his claim, the motion to dismiss is granted. 42 USCS § 1997e(a).

Defendants assert a number of additional defects in the present action, e.g. that only DOC's personnel, not OMH personnel, could grant the relief plaintiff seeks, which the Court need not resolve for purposes of this motion, but which the Court urges plaintiff to consider in deciding whether to refile this complaint and exhaust his available remedies as to it, as he is free to do, or to commence a new action against the proper parties and exhaust his remedies in that new proceeding. Plaintiff may, if he wishes, seek the advice of the Pro Se Clerks Office in the United States Court House, 500 Pearl Street, New York, N.Y. 10007. He should not, however, write to the court.

CONCLUSION

For the reasons stated above, defendants' motion is granted, and the Complaint is hereby dismissed without prejudice.

SO ORDERED.

Dated:   New York, New York

September 21, 2006

_____
U.S.D.J.